## WESTON ET AL. V. EMERY.

SETTLEMENT OF ACCOUNTS: EVIDENCE CONSIDERED.

*Appeal from Lee District Court.*

FRIDAY, OCTOBER 25.

IN 1874 an action was commenced against the defendant by R. Weston, to recover five thousand eight hundred dollars on an account which was attached to the petition, and showed there was due the plaintiff upward of ten thousand dollars. The defendant pleaded a counter-claim, and asked a judgment for fifteen thousand dollars. He also asked that J. H. Weston and R. & J. H. Weston be made parties, which was accordingly done.

Afterward it was agreed the parties should meet at La Crosse, Wisconsin, and make an effort to settle and adjust the several matters in dispute between them, and such items as they were unable to agree upon were to be referred to certain named persons as arbitrators.

The result of the meeting held in pursuance of this agreement was that an attempt to settle was made, and they afterward appeared before the arbitrators, and the plaintiffs claimed there had been a settlement, and that it had been agreed there was due them upward of eight thousand dollars. The arbitrators, however, determined no settlement had taken place. Thereupon the arbitration was abandoned and the controversy remitted to the District Court, and it was agreed the trial should be had

on the basis of what are designated as exhibits "3" and "7," which contain items of the accounts of the parties, which had been to some extent considered at the meeting had at La Crosse. But both parties had the right to add other items to said exhibits.

The pleadings were reformed, and the defendant pleaded a counter-claim, and asked a judgment for twenty-five thousand dollars.

A trial was had on written evidence, the books of account of the parties, and certain exhibits.

The District Court found for the plaintiffs, and rendered judgment against the defendant for three thousand five hundred dollars, and the defendant appeals.

*Joseph G. Anderson*, for appellant.

*D. F. Miller & Sons* and *Van Valkenburg & Hamilton*, for appellees.

SEEVERS, J.—The parties commenced dealing together in 1866, but it is conceded the accounts between them were adjusted, and the balance due the defendant paid, September 10, 1868. The defendant claims there was another settlement about April 5, 1871, and that there was then found due the plaintiffs three thousand four hundred and fifty-six dollars and thirty-nine cents, including a transaction with Bell & Co. of six hundred and forty-seven dollars and three cents. This is denied by plaintiffs, and they seek to recover for certain transactions which took place as early as December, 1868

There are several matters bearing on this question which, it is insisted, clearly show that such settlement did take place, some or all of which will be noticed: remarking, however, if there had been a reference, or finding of facts by the court below, a determination could have been more satisfactorily reached without encumbering the reports with the lengthy opinion required for a brief discussion of such matters, which can be of no possible benefit to the profession, as the whole case turns upon questions of fact.

I. The defendant's books show a balance was struck, the entry being dated March 24, 1871. Afterward it was found the Bell & Co. transaction should have been included, and this was added in June following; the balance, as shown by the books, being three thousand four hundred and fifty-six dollars and thirty-nine cents. Standing alone, we cannot regard these entries in the defendant's books as evidence of a settlement. At most, the books only show there was that amount due at the time the entries were made; but no evidence can be derived therefrom that the plaintiffs agreed thereto.

The defendant testifies that there was a settlement on the 5th of April, 1871, and the above amount then found due the plaintiffs. On that day a contract in writing was entered into by the parties which, it is claimed, tends to sustain the defendant in this respect, but we are unable to see that it has any material bearing in this direction.

The defendant is the only witness who testifies there was such a settlement. C. F. Emery, a son of the defendant, testifies that his father told

him there had been a settlement, but he had no personal knowledge of such transaction.

While R. Weston does not in express terms deny such settlement, yet it is fairly inferable from his evidence that it did not take place; and John H. Weston testifies: "We had not had any settlement with Mr. Emery since 1868."

One Garrett testifies that about the middle of April, 1871, he heard a conversation between the defendant and John H. Weston in which he said, after being informed of the contents of a raft of logs sold by the plaintiffs, belonging to the defendant, "that will overpay us what you owe us." This remark tends to show that Weston supposed the amount then due the plaintiffs was less than five thousand dollars, while they now claim there was much more than that amount.

Conceding the mark to have been made and correctly rendered by the witness, we are unwilling to attach much importance thereto. It appears the conversation was at a casual meeting of the parties in the street, and there is nothing tending to show that Weston's attention had been called to the condition of the accounts, or that the remark was advisedly made. The defendant is a nephew of Rene Weston, and for this reason or some other it is quite evident the books and accounts were loosely kept. Items were jotted down on memorandum books, and transferred from these to a day-book and ledger as was convenient. It was somewhat difficult to determine the amount due either party from the ledger at any given period; or, rather, it was by no means certain the ledger showed the true amount. For the reasons stated, and others that might be given, we are not satisfied there was not more due the plaintiffs than John H. Weston's remark would indicate. If there was no evidence showing otherwise it would of course be a controlling circumstance. But, whether this be true or not, we are satisfied there is nothing in what was said by Weston which tends in any considerable degree to prove there had been a settlement, and that the amount then due had been adjusted and was then known. At most we think it tends to establish that Weston, at the time, supposed about a certain amount only was due them.

It is also insisted the plaintiffs' books tend to sustain the defendant's theory in this respect. It will be remembered it is claimed the settlement took place about April 5, 1871, and we have heretofore shown what the defendant's books show in relation thereto. It appears from the books of the plaintiffs that on August 1, 1872, there was a balance struck, and there was then due the plaintiffs, on that page of the ledger, and of which exhibit "I" is a copy, three thousand one hundred and fifty-three dollars and thirty-eight cents, which was carried to "N. L.;" meaning, without doubt, new ledger. The account seems to have been commenced in 1868, and finally closed and the balance transferred to a new book. Turning thereto, such balance is found therein, and also other charges and credits. The striking of such balance in August, 1872, cannot be regarded as evidence of a settlement between the parties more than a year previous to the entry; nor would it alone prove there had been an adjustment of accounts at the time it was made. The entry was evidently made in the

due and ordinary course of business, and for a proper purpose. The books of neither party show an adjustment of accounts which had been agreed to by the other party.

If a settlement in fact took place, the strong probability would be that it would be shown by some entry in the books of each, and that the books would agree in relation thereto. There is no evidence tending to show there was any difficulty between the parties, but, on the contrary, they continued to do business together on friendly terms long after the time of the alleged settlement. Besides this, C. F. Emery testifies that when the plaintiffs, at the meeting at La Crosse in 1875, claimed certain items of account as far back as 1868, his father objected thereto, because "most" of the accounts had been settled in the spring of 1871. This would indicate there had only been a partial looking over and settlement at that time. The burden as to this question is on the defendant, and we are unable to say there is a preponderance of the evidence in favor of his theory in this respect.

II. The parties met at La Crosse in 1875, with the avowed object and purpose of making an honest endeavor to effect an adjustment of all matters in dispute between them. The plaintiffs insist a settlement was in fact effected; that is to say, they claim the several items claimed by each party were set down, and that the same were agreed to before they were so set down, and the balance then struck, and there was found to be due the plaintiff eight thousand seven hundred and seventy one dollars and nineteen cents. But the plaintiffs concede that the defendant did not agree there was that sum due. They concede that upon ascertaining the balance the defendant objected thereto, and said there must be some mistake.

The parties did not agree that the above amount was due. It cannot be said, therefore, there was any settlement at that time. In this respect we concur with the arbitrators, one of whom at that time was, and is yet, counsel for the plaintiffs. While this is true, if the separate items which constituted the accounts of the parties were discussed and understood before being put down and agreed to as correct, the balance found due was the necessary result, in the absence of mistake, of the several amounts agreed upon. Therefore, considering the object and purpose of the meeting, what actually took place constitutes most cogent evidence of the correctness of such matters as were agreed upon, or not objected to, before being reduced to writing, unless a sufficient reason is given now for what was omitted to be done then.

There were present at that time the two Westons, the defendant and his son, and one Smith, who was a clerk and book-keeper for the Westons. There are material differences between these persons as to what occurred on that important occasion. The defendant and his son testify that the former objected to putting down any item the date of which was previous to the alleged settlement in April, 1871. They also state that J. H. Weston said, when they commenced looking over the accounts : "Let each of us take a piece of paper and put down the items claimed by each, that we will know what we have got to look over and talk about," or words to that

effect. From their testimony it appears the putting down on paper of the items claimed by each amounted to nothing unless they were afterward agreed to, and the result, according to their evidence, was that not a single item was agreed to on either side. The parties were engaged two days, or the greater portion thereof, in looking over the accounts.

Smith testifies there was some time spent examining accounts and talking matters over, and "after they had completed their negotiations J. H. Weston said to Mr. Emery: 'What we agree on let's put down, so that we will understand it.' Then Mr. Weston asked me to write that heading of exhibit No. 3." He thinks both J. H. Weston and C. F. Emery had made written memorandums before he was asked to write said exhibit; that "C. F. Emery and myself checked the items in the exhibits with those on the memorandum from which he read—that is to say, he called and I checked." Smith also testifies no objection was made when J. H. Weston said, "What we agree upon let us write down." "After the balance was called, T. B. Emery said there must be some mistake, as he thought there were rafts that he had not received credit for." Smith heard nothing about a settlement in April, 1871, or any objection to going back of that period.

J. H. Weston states what occurred substantially as Smith does, and R. Weston testifies the mutual accounts were at that time " carefully examined by J. H. Weston and Charles F. Emery," and the result embodied in certain writings, which are correct.

According to the testimony of Smith and the Westons every separate item in exhibits "3" and "7" was agreed to, and the only reservation made was that there were other rafts for which no credit had been given.

Considering the object and intent of the meeting it cannot but be regarded as strange that not a single item was agreed to. After a careful consideration of the testimony, with the object of reconciling it so far as can be done, we are disposed to think the Emerys, when they state J. H Weston made the remark that they would set down what each claimed, and determine as to the correctness thereof afterward, have reference to the memorandums made by J. H. Weston and C. F. Emery, and not to the exhibits written by Smith. They constitute separate and distinct transactions. It seems hardly possible that the story told by Smith is made out of whole cloth. He is, so far as we can see, entirely disinterested, and his credibility is unimpeached. It is not likely that C. F. Emery would call off and check items, and see that Smith was writing them down under an appropriate heading, which were disputed or were trumped up for the occasion.

Without enlarging on this question we feel constrained to say that in our judgment there is a fair preponderance of the evidence in favor of the proposition that all the items in said exhibits were agreed to subject to the right of either party to show there was a mistake, and the right of the defendant to show there were rafts for which credit had not been given. As to the latter there is no testimony whatever. The only additional raft claimed in defendant's counter-claim is one sold to Taber & Co., and it is conceded by counsel for appellant that plaintiffs fully accounted for all they received, and that the same is correctly stated in said exhibits.

The only other claim made as to rafts is this : At the meeting in La Crosse the plaintiffs accounted for all at the uniform rate of nine dollars per thousand feet. The defendant claims that as to two of the rafts he should have a higher price. We have examined the evidence with care upon which this claim is based, and we are unable to conclude that it is sustained.

We have compared the several items in the counter-claim with defendant's credits in exhibits "3" and "7," and find there are but a few hundred dollars of additional items contained in the counter-claim.

The principal contest, therefore, is as to the plaintiffs' credits, several of which are assailed and specifically objected to as not being sufficiently established, or as consisting of double charges.

If what occurred at La Crosse was entitled to no credit whatever, we incline to think some of these items should be disregarded ; but the amount we so find would not be sufficient to reduce the amount of the plaintiffs' recovery below that allowed by the District Court.

We cannot undertake to refer to these matters in detail, and state our reasons at length for our conclusions. To do so would swell this opinion to an undue length, without any beneficial result. It is sufficient to say, considering all the testimony together, we think the preponderance is with the plaintiffs.

It is urged that the defendant was not present during all the negotiations at La Crosse, and that he is not bound by the acts and conduct of C. F. Emery, who was the principal actor in what occurred there. It is quite evident that both R. Weston and the defendant remitted to their respective sons the duty of looking over the accounts and making memorandums; they both, however, being present most of the time. The defendant must have known what was being done on that occasion. He must have known the several items mentioned and claimed, and he knew of their being written down by Smith. If anything not a correct charge against him was written down, it was his duty to speak, and we think he is bound by whatever occurred there, and by whatever was agreed to by C. F. Emery, who was his agent, acting for him and in his presence.

We have regarded this cause as triable anew here, as is claimed by the appellant, but we have not undertaken to determine whether the plaintiffs are entitled to a larger judgment than that recovered below, for the reason that plaintiffs have not appealed therefrom ; and, as we understand, they are content therewith.

AFFIRMED.